18619. WELLS *v.* SCOTT, Executor, *et al.*

Argued June 15, 1954—Decided July 13, 1954.

757

*Kimzey & Crawford,* for plaintiff in error.

*Wheeler, Robinson & Thurmond, J. B. G. Logan, R. C. Scott,* contra.

WYATT, Presiding Justice. 1. In determining the issues raised in this case, it is necessary to construe three items in the will in question. These items read as follows: "Item 2. I give and bequeath unto my beloved wife, Hester Penland Wells, the income from all my business property of which I may die possessed located both in Cornelia and Toccoa, Georgia, for and during her natural life, and during her control of said property and while she is receiving the income therefrom, she is to pay for the necessary repairs, taxes, and other charges incident to the upkeep of said property. This bequest is in lieu of dower and year's support."

"Item 10. It is my wish and I so direct my executor hereinafter appointed, to dispose of all my farm land wherever situated, except the two farms herein already devised, and other unimproved realty that I may own at the time of my decease, together with all personalty, at public or private sale, as he may deem best, with or without advertisement, and collect all notes and accounts that may be due me, retaining the proceeds of such sales and notes and accounts as well as all other choses in action, to pay any debts that I may owe at my death, or other legal charges against my estate."

"Item 14. After all legal charges against my estate shall have been paid should there remain in the hands of my executor any funds, it is my wish and will that such residue be paid to my wife, Hester Penland Wells. If the funds coming into my executor's hands are insufficient to meet all legal demands incident to the settlement of my estate, I direct that my wife, Hester Penland Wells, pay such deficit out of current income."

The decree of the court required the defendant to deliver immediate possession of all property described in Item 2 of the will to the plaintiff; to pay to the plaintiff all money received by him as executor as income from the said property, less expenses incurred in the management thereof, plus interest received

758

by investing the proceeds, and less any amounts already paid to the plaintiff. The decree then provides as follows: "That if the property referred to in the foregoing item (Item 10) proves insufficient to pay the debts and legal charges against the estate of the decedent, that said executor file a written report with the clerk of this court verified by affidavit showing the amount paid on debts and other legal charges against said estate and the amount realized from the sale of the property referred to in the foregoing paragraph, and the amount of the deficiency, and that the plaintiff shall be personally served with a copy of said report and will be given a period of 30 days within which to file an answer and to traverse any part or all of said report. If no such answer or traverse is filed within 30 days from the date of service as herein provided, the facts stated in said report shall stand as established. If a traverse be filed, the court will fix a date to determine any issue that may arise therefrom."

"4. . . . But, if said property proves insufficient to pay said indebtedness and legal charges, upon the establishment of a deficiency in the manner in this decree provided, it is adjudged that the plaintiff be required, and she is hereby directed, to pay said deficiency from the income and profits derived by her from the property referred to and described in Item 2 of said will."

The plaintiff excepts to two other provisions in the decree. One of these provisions provides for the payment of costs by the executor out of any funds in his hands not specifically devised. The other provides for the retaining of jurisdiction by the court for the purpose of determining whether or not the funds raised under Item 10 of the will are sufficient to pay the debts and legal charges against the estate.

The question presented for decision in the instant case is what is the effect of Items 10 and 14 upon Item 2 of the will of the deceased. The plaintiff in error contends that these later items have no effect upon Item 2, and that she should take the interest devised to her free from any charge upon it as to the payment of debts and legal charges which the executor is unable to pay from other funds in his hands not specifically devised. The exceptions to the decree and the motion for new trial present the same questions and will be considered together.

The parties to this litigation have made this case very com-

plicated and have brought in many questions which are not material to a decision of the issues presented. As we see this case, the question presented is very simple. It is, what did the testator intend by the language used in his will. This question is sometimes not so simply resolved, but, in the instant case, its resolution is not so difficult.

By Item 2, the testator clearly intended that his wife, the plaintiff in error here, should have a life estate in the business property referred to and in the home in which she lived. There is no serious controversy about this.

Item 10 of the will directs the sale of certain farm land and the collection of notes, accounts, and other choses in action by the executor for the purpose of paying the debts and legal charges against the estate. There is no contention that this can not be done or that the money so collected can not or should not be used for the purpose directed in the will.

The real controversy arises with regard to Item 14. Certain contentions by the plaintiff in error with regard to this item will be considered later in this opinion. At this point, we proceed with the construction of the language used in the will. The first sentence of Item 14 deals with the disposition to be made if a surplus should remain in the hands of the executor after the debts and legal charges against the estate have been paid. It will be noted that Item 10 deals with the collection of a fund with which to pay the debts and legal charges of the estate. Everything else the testator owned, by other items of the will, is specifically devised to various persons. It is only from the property referred to in Item 10 that there could possibly be any residue. Therefore, if Item 14 has any meaning, it must refer to Item 10.

The same must be true as to the funds referred to in the second sentence of Item 14 with reference to a deficiency in the funds to pay the debts and legal charges. The funds raised in Item 10 are the only funds wherein a deficiency could exist, since these are the only funds with which the debts and legal charges are directed to be paid. The word "funds" as used in this item must be construed to mean funds collected to pay debts as directed in Item 10. Both Item 10 and Item 14 deal with the payment of debts and must be considered together.

There is one further point of controversy in Item 14. That is, what is meant by "current income" as used in Item 14. A consideration of the whole will makes it clear that what the testator meant by "current income" was the income from the property devised to his wife in Item 2. In so far as this record shows, the wife has no other current income. Certainly there is no other current income devised to her in the will, or any other current income to which the will could refer.

We therefore construe the items of the will in question to mean that the testator devised to the plaintiff in error a life estate in certain business property. (Item 2.) The testator also provided a fund out of which the debts and legal charges against the estate were to be paid. (Item 10.) Then, in Item 14, he provided that, if any residue remained in the hands of the executor after carrying out the directions contained in Item 10, it should be paid to the plaintiff in error. If, however, the funds collected in Item 10 were insufficient to pay the debts and legal charges, the plaintiff in error is directed to make up the deficiency out of the income she receives from the property bequeathed to her in Item 2. This we think is a fair and reasonable construction of the language in question, and is perfectly in line with a reasonable disposition of the property of the deceased and is clearly what the deceased intended by the language used in his will.

2. What we have said above we think disposes of all substantial questions presented by the record in the instant case. The plaintiff in error has, however, argued that, by electing to take under the will in lieu of dower and a year's support, she became a purchaser of whatever was devised to her in the will. That may be so, but she became the purchaser only of the interest devised to her, including the burdens placed upon that interest. She can not elect to take the benefits under the will and reject the burdens. *Miller* v. *Cotton*, 5 *Ga.* 341.

3. It is also contended that the notice of election by the plaintiff in error referred only to Item 2, and that she elected to take only under Item 2 and that the executor assented to the devise. It is true that the plaintiff in error tried to limit her election to Item 2. However, as ruled above, she must elect to take under the whole will. *Miller* v. *Cotton*, supra. Also the

executor refused to assent to the legacy as presented, but added in his assent that he assented to the legacy in Item 2 as modified by later items of the will. It follows, there is no merit in this contention.

4. There is no merit in the contention that, by imposing a burden upon the life estate to pay the debts of the deceased, a limitation is placed upon the right of the widow to dower since this life estate was taken in lieu of dower. It is sufficient to say that the life estate here involved is not dower. The life estate together with its burdens was accepted in lieu of dower, but it can not be construed to be dower or to be endowed with the attributes of dower.

5. Certain other exceptions to portions of the decree relating to costs and retaining jurisdiction by the court are made and argued. We think it sufficient to say that there is no merit in any of them. These provisions in the decree are all within the power of a court of equity to supervise the administration of an estate to see that justice is done.

6. Certain other exceptions will not be considered specifically. The questions there raised we deem to be either immaterial or to be fully covered by the foregoing. It follows, there is no error in the judgment complained of.

*Judgment affirmed. All the Justices concur.*