23383.  COOK v. SHEATS.

ARGUED MARCH 15, 1966—DECIDED APRIL 7, 1966—
REHEARING DENIED APRIL 19, 1966.

*Tom Dillon*, for appellant.

*Sheats, Parker & Webb, John Tye Ferguson, Webb, Parker & Ferguson*, for appellee.

COOK, Justice.  Harold Sheats, as executor of the will of DeForest King, also known as D. King and John May, sought

to probate the will in solemn form in the Court of Ordinary of Fulton County. The testator died a resident of the State of California but owned real property in Fulton County. Robert N. Cook filed a caveat to the will, which was overruled by the Ordinary of Fulton County. On appeal to the Superior Court of Fulton County, the trial judge directed a verdict for the propounder, and the appeal in this court is from that judgment.

The enumeration of errors asserts that the trial judge erred in directing a verdict for the propounder because there was evidence of general insanity and monomania of the testator. It is further asserted that it was error to exclude evidence as to how the property devised in the will came into the ownership and possession of the testator.

■ The propounder has filed a motion in this court to dismiss the appeal on the ground that the issues are moot because the will of the decedent has been admitted to probate in the State of California. The judgment of the Superior Court of Fulton County was entered on October 13, 1965. The will was admitted to probate in the State of California on November 29, 1965. The caveator in response to the propounder's motion to dismiss has shown that a petition has been filed in the State of California to revoke the probate of the will in that State.

The will was not offered for probate in this State on an exemplification of the probate proceedings in California under Ga. L. 1959, pp. 136, 138 (*Code Ann.* § 113-703), but was offered in the same manner as wills of residents of this State under *Code* § 113-702. Since it appears that the probate in California was subsequent to the judgment of the Superior Court of Fulton County, and that the issue as to testamentary capacity has not been decided in the State of California, the order of probate in California would not render the present case moot. The motion to dismiss is denied.

■ The will of D. King, which was executed on July 28, 1953, devised and bequeathed all of his property, after the payment of debts, to the United Daughters of the Confederacy. There was ample evidence for the propounder by the subscribing witnesses and others to authorize a finding that the testator was mentally competent to make a will. It is unnecessary to nar-

rate any of this testimony since the question for decision by this court is whether there was any evidence requiring the submission to the jury of the question of mental competency of the testator.

Charles Millard Pitts, a former tenant of the testator, testified that he moved onto the testator's property in 1952 or 1953. He related that: He had seen the testator three of four different times, while the witness was talking to him on some serious matter, stop the conversation, commence jumping up and down, clapping his hands together, and laughing as if something were amusing. The testator put a cable across the driveway of his property on which the witness lived, and gave the witness orders not to allow anyone to come on the property even for business purposes. He would not permit the witness to cut the grass and weeds, and said that he wanted the place to grow up and look like a jungle. He stored new and unused tools of a value of three or four hundred dollars and a new refrigerator in a locked room of the house rented by the witness, and never used them from the date of 1952 or 1953 until his death.

Robert N. Cook, the caveator, testified that on the morning of the date the will was executed the testator, who was a cousin of the witness, was staying at his home; and the testator called the witness into his bedroom and asked the witness whether he saw anybody out in the field, stating that he knew that gangsters out of Chicago were "after him." This witness testified further: The testator frequently stayed at his home, and several times the testator made the statement that gangsters from Chicago were "after him," and would ask the witness to come and look out the window. The witness had never known of any gangsters from Chicago pursuing the testator, and he would tell the testator "to go and sit down, forget it." The testator always slept with a camera in his bed. At one time in 1953 or 1954 the testator had a fox at his farmhouse, tied to his bed, and the fox slept on the bed. Before and after the date of July 28, 1953, he had observed the testator on numerous occasions suddenly break out in laughter during a serious conversation, and start clapping his hands and stamping his feet. Based on the facts to which he had testified, the witness was of the opinion that the testator was insane.

Dr. Winston Burdine, a practicing psychiatrist, testified on hypothetical questions that if a person behaved in the manner shown by the testimony of these witnesses, in his opinion the person would be psychotic or insane.

A trial judge can not properly direct a verdict because the evidence preponderates to one side rather than the other. *Code* § 110-104; *Northwestern University v. Crisp*, 211 Ga. 636, 647 (88 SE2d 26). There was evidence in the present case on the question of insanity of the testator which raised an issue of fact as to his testamentary capacity. *Thompson v. Mitchell*, 192 Ga. 750 (16 SE2d 540). This issue should have been submitted to the jury, and it was error to direct a verdict for the propounder.

■ It is asserted in the enumeration of errors that the evidence made an issue of fact as to whether the testator had monomania, in that he believed that he had no relatives except the caveator, whereas he had a number of cousins. While there was testimony by two witnesses that the testator refused to recognize any of his cousins as relatives except the caveator, and spoke disparagingly of him, it is evident from the entire testimony of these witnesses that the testator was alienated from his other cousins and refused to associate with them, and not that he did not know that they existed. The trial judge did not err in failing to submit to the jury any question as to whether the testator was mistaken as to the existence of some of his relatives.

■ The caveator attempted to show that property owned by the testator came from the family of the caveator. The trial judge held that the evidence was not admissible and instructed the jury to disregard any testimony showing how the testator acquired the property, stating to them that the question of how the testator derived ownership of the property was not involved in the case.

This court has repeatedly held that where there is an issue of fact as to the testamentary capacity of the maker of a will, evidence showing the source from which property disposed of by the will came into the decedent's possession is relevant and material to show whether the provisions of the will are just and reasonable, and accord with the state of the testator's family relations. *Pergason v. Etcherson*, 91 Ga. 785 (1) (18 SE 29);

*Holland v. Bell,* 148 Ga. 277 (1) (96 SE 419); *Murphy v. Murphy,* 152 Ga. 275 (109 SE 903); *Northwestern University v. Crisp,* 211 Ga. 636, 642, supra; *Worrell v. Ganns,* 214 Ga. 708 (3) (107 SE2d 186).

The testator in the present case left all of his property to the United Daughters of the Confederacy, and the trial judge erred in refusing to allow evidence of the source from which the property was derived.

*Judgment reversed. All the Justices concur.*