41315. DEAN v. MORSMAN.
(327 SE2d 212)

BELL, Justice.
This appeal involves questions of testamentary capacity and undue influence. The deceased, Robert Lee, Sr., is the father of the appellee, Dora Jean Lee Morsman. The appellant, Dorothy Dean, is the sister of Robert Lee's ex-wife, who was divorced from Lee in October 1979. On October 22, 1980, Lee executed a will in which he acknowledged his two children, Dora Jean Lee Morsman and Robert Lee, Jr.,

but devised all his property to Dorothy Dean. Lee's son subsequently died. On December 17, 1982 Lee committed suicide. Dorothy Dean propounded his will for probate in solemn form, to which Dora Jean Lee Morsman caveated. The probate court admitted the will to probate, and Morsman appealed. On April 6, 1984, after a non-jury trial, the superior court, finding that it should determine the case under the "slight evidence" test of OCGA § 53-2-9 (b)[1], concluded that the caveatrix had produced more than slight evidence of lack of testamentary capacity and undue influence on the part of Dorothy Dean. Accordingly, the court reversed the judgment of the probate court, and denied probate.

During the trial of the case, attorney William C. Peters testified that he had known Lee since he was a young boy. Lee, according to Peters, always was of normal, sound mind. Peters said that on August 29, 1979 Lee and his then wife, Dorothy Dean's sister, came to his office and discussed the possibility of drawing a will. No will resulted from this conference. Peters testified that Lee seemed competent to make a will on that date.

On October 1, 1980 Lee telephoned Peters' office, leaving a message for Peters to call him. When Peters returned his call, Lee told him that he wanted to leave everything he had to Dorothy Dean. Peters asked him about his children, and Lee told him that he knew Dean would take care of them. According to Peters, Lee sounded like himself. Peters drafted a will in line with Lee's instructions, and on October 22 Lee came to his office to sign it. He and Peters went into a room by themselves, where they talked about the will. Peters explained the meaning of the will to Lee, and asked him again if he wanted to execute it; Lee said he did. At that time, Peters, on his own initiative, prepared a power of attorney in favor of Dorothy Dean. He said it was his habit to do so at the same time he drafted wills, where, for example, the testator had no close relatives.[2] Lee then executed the will in the presence of Virginia Causey, Peters' secretary, and Peters, with them as subscribing witnesses, and paid for Peters' services with a check.

According to Peters, he did not notice any signs that Lee had

---

[1] OCGA § 53-2-9 provides that "(a) A testator, by his will, may make any disposition of his property not inconsistent with the laws or contrary to the policy of the state. (b) A testator may bequeath his entire estate to strangers, to the exclusion of his spouse and children. In such a case the will should be closely scrutinized; and, upon the slightest evidence of aberration of intellect, collusion, fraud, undue influence, or unfair dealing, probate should be refused."

In addition to the issues addressed in our opinion, appellant also contends that OCGA § 53-2-9 (b) is inapplicable to the facts of this case. In light of our disposition in appellant's favor on other grounds, we pretermit consideration of this issue.

[2] Though Lee did not fit this category, Peters did not offer any other explanation.

been drinking that day; if he had, he would not have allowed Lee to execute the will. He saw nothing wrong with Lee that day; he was not visibly shaking, and had no problem standing up, walking around, talking, answering questions, or telling Peters what he wanted to do. As far as Peters could tell, he was not under the influence of stimulants or drugs, nor was he under the influence of any third person. Peters said that, in general, nobody could force Lee to do what he did not want to do; if someone tried, he did so at his peril. On the day the will was executed Lee appeared to be doing what he wanted to do, and the will appeared to be the product of his own free will and choice. Peters saw Lee on several subsequent occasions before his death, but Lee never asked him to change the will.

Virginia Causey's statements concerning the circumstances of the making of the will, including Lee's apparent physical and mental condition, were substantially to the same effect as Peters'.[3]

Dorothy Dean testified that on October 22, 1980, Lee drove her to Peters' office. She accompanied him at his request, without knowing their destination. Dean was present in Peters' reception area when Lee executed the will; however, she was on the other side of the room, and could not hear what Peters, Causey, and Lee were saying. She wrote the check to pay Peters. She said she did not know about the power of attorney, and did not see the will until Lee's death, although she discussed it with him after its execution. She admitted that she could do more with Lee than anybody else, but asserted that "he was so stubborn that if he didn't want to there was no use talking to him."

The dispositive issue raised on appeal by Dorothy Dean is, simply put, whether there was, as the superior court found, at least "slight evidence" that, at the time he executed his will, Lee lacked testamentary capacity and was subject to undue influence by Dorothy Dean. We conclude there was not, and reverse.

1. We first address the problem of testamentary capacity. " 'Where testamentary capacity is the issue, the controlling question to be determined is the condition of the mind at the time of the execution of the will. As tending to illustrate the mental condition at that time, evidence of such condition at other times may be received, but where it is sought to establish testamentary incapacity by such evidence, it does not controvert the positive testimony of the subscribing witnesses unless it would be proof of testamentary incapacity at the time the will was signed.' *Fehn v. Shaw*, 199 Ga. 747 (35 S.E.2d, 253), and citations. This rule does not mean that, in order to

---

[3] Causey was living in Texas at the time of trial. Her affidavit was submitted for the court's consideration in lieu of testimony.

overcome the positive testimony of the subscribing witnesses, it is essential to establish incapacity by someone who was present when the will was signed or who saw the testator the day the will was executed. Evidence as to the state of mind of the testator prior to and subsequent to the date of the execution of the will may illustrate the incompetency of the testator at the time of its execution. Where a condition of incapacity is shown to exist prior to the execution of a will, and it is further shown that this condition continues for a period of time subsequent to the date of execution, it is evidence showing incapacity at the time of execution, and controverts the positive evidence of the subscribing witnesses, thus making an issue of fact for the jury." (Cits. omitted.) *Ware v. Hill*, 209 Ga. 214, 218 (2) (71 SE2d 630) (1952).

The superior court made the following findings of fact, which it relied upon as establishing "slight evidence" of lack of testamentary capacity: Lee suffered from disabilities dating from his service in this country's armed forces, but the nature and extent of those disabilities was unclear; he had been repeatedly hospitalized for alcohol-related problems; three separate doctors were prescribing Valium, a tranquilizer, for Lee, and, in addition, Dean, who had quantities of the drug, was obviously providing it to Lee. Lee was a chronic alcoholic and was dependent upon the tranquilizers. As a result of these dependencies, he had suffered irreparable brain damage and was physically and mentally disabled; and, according to some witnesses, he appeared to be depressed whenever they encountered him. The court concluded that, considering the testimony as to his physical and mental condition, there was "substantial direct evidence of aberration of intellect," sufficient to deny probate.

We do not disagree that there may have been evidence of aberration of intellect on the part of Lee, *on dates other than the execution of the will.* However, the subscribing witnesses gave clear and positive testimony that on October 22, 1980 Lee did not appear intoxicated, and exhibited no outward sign of testamentary incapacity. In particular, the testimony of Lee's attorney, who had known him many years, revealed diligent efforts by the attorney, while they both were closeted away from Dorothy Dean, to carefully explain the import of the will to Lee and closely question him about his understanding of the will. At the end of the conference the attorney was totally satisfied that Lee had testamentary capacity. There is no evidence in opposition to this testimony which would establish by inference, that, due to drug dependency and brain damage,[4] Lee was *continuously* disabled

---

[4] The equivocal nature of testimony concerning the extent and nature of Lee's service-related disability renders it of no probative value on this issue.

over a period which would have included the date of execution of the will. Cf. *Ware v. Hill*, supra, 209 Ga.; *Borenstein v. Blumenfeld*, 250 Ga. 606 (4) (299 SE2d 727) (1983); *Mallis v. Miltiades*, 241 Ga. 404 (245 SE2d 655) (1978). We therefore conclude that there is not even slight evidence of lack of testamentary capacity.

2. The remaining issue for this court to consider is the alleged undue influence exerted by Dorothy Dean. "It is insufficient to show merely that the persons receiving substantial benefits under the instrument sought to be propounded occupied a confidential relationship to the testator and had an opportunity to exert undue influence. The indulgence of mere suspicion of undue influence cannot be allowed. Even the evidence of undue influence over the mind and will of the testator at another time will not invalidate a will."[5] *Dobbs v. Burnette*, 250 Ga. 47, 49 (295 SE2d 836) (1982). " ' "Undue influence, to invalidate a will, must amount to force or fear — must, in effect, make the will the mental offspring of some other person, and must be operative on the mind of the testator at the time the will is executed. It must destroy the free agency of the testator and constrain him to do what is against his will, but what he is unable to refuse." ' " (Cits. omitted.) *Norton v. Ga. R. Bank &c. Co.*, 248 Ga. 847, 849 (4) (285 SE2d 910) (1982).

In the instant case, the superior court found that Dean occupied a position of special confidence with Lee. For example, the court stated that at the same time as the will was executed, or closely connected in point of time, Lee gave Dean a power of attorney, and changed his life insurance policy, naming her as his principal beneficiary. The court further found that she had authority to draft checks on his account, and that she paid Peters for his services. At the time the will was executed, she lived in Lee's home, kept house for him, paid his bills, and attended to many of his personal and business affairs. These facts led the court to conclude that, although there was no direct evidence in the record of undue influence, there was more than slight evidence in the record that Dean "was in a position to and did exert undue influence upon the mind and will of Robert Lee at the time he executed the purported will."

Again, we disagree with the court's conclusion. It is true, of course, that Dean was the sole beneficiary of his will (as well as his life insurance), and had a close relationship with Lee, generally attending to his needs. Moreover, Dean admitted that, in general, she had more influence over Lee than anyone else. However, in our opinion, these facts suffice to raise nothing more than a mere suspicion

---

[5] Citations of authority and internal quotation marks from this quoted passage are omitted.

that Dean exercised undue influence over Lee at the time he executed the will. There is no circumstantial evidence to show that, at the time Lee executed the will, Dean was exercising such force or duress that she destroyed his free agency, substituting her will for his own. To the contrary, the uncontradicted evidence shows that Lee initiated the drafting of the will, drove her to Peters' office without telling her their destination, and conferred with Peters about the will out of her presence. Moreover, Lee appeared to the subscribing witnesses to be acting of his own free will. Although Dean was present when he executed the will, she was seated at the far side of the room, and did not participate. Thus, we find that there was not the slightest evidence of undue influence, and the superior court erred in concluding otherwise.

For the foregoing reasons, the superior court erred in denying admission of Lee's will to probate.

*Judgment reversed. All the Justices concur, except Weltner, J., who dissents.*

DECIDED MARCH 15, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Short & Fowler, Larkin M. Fowler, Jr.,* for appellant.
*Kirbo & McCalley, Thomas L. Kirbo III,* for appellee.