S94A1923. SIMS et al. v. SIMS et al.
(452 SE2d 761)

FLETCHER, Justice.

The trial court denied a petition to probate the last will and codicil of Curtis Richard Sims after a jury found that they were the product of undue influence. Because there was insufficient evidence of undue influence at the time Sims executed the will and codicil, we reverse.

Sims drafted a will in 1984 dividing the residue of his estate to his four surviving children (Edward, Brenda, Anita, and Wayne) and the children of a deceased fifth child (Marshall). He revised the will in 1987 and deleted the provision giving Marshall's children a per stirpes share of the estate. Instead, the 1987 will gave each grandchild $10,000 and divided the residue, including business property, among the four living children. A 1989 codicil changed specific bequests. Sims died in 1992 and Edward and Wayne, as the estate's executors, offered the 1987 will and 1989 codicil for probate in Fulton County Probate Court. Marshall's three children filed a caveat asserting monomania and undue influence. They admitted a prima facie case at trial, conceding that Sims executed his will as required by law, had sufficient mental capacity to make the will, and acted freely and voluntarily in making it. A jury returned a verdict in favor of the granddaughters, finding that Sims did not suffer from monomania or delusions, but that the will and codicil were the product of Edward's and Wayne's undue influence. Edward and Wayne moved for a directed verdict and later a judgment notwithstanding the verdict or a new trial, which the trial court denied.

Because "[t]he right to make a will is a valuable right," a stringent standard must be met to deprive a person of this power. See *Brumbelow v. Hopkins,* 197 Ga. 247, 255 (29 SE2d 42) (1944). "Undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency." *Bohler v. Hicks,* 120 Ga. 800, 809 (48 SE 306) (1904). Although evidence of undue influence at other times may be presented to illustrate conditions existing when the will was executed, the improper influence must operate on the testator's mind at the time the will is executed. *Boland v. Aycock,* 191 Ga. 327, 329 (12 SE2d 319) (1940).

Evidence that shows no more than an opportunity to influence and a substantial benefit falls short of showing the exercise of undue influence. *Brumbelow,* 197 Ga. at 252. Nor does honest persuasion or

argument constitute undue influence in the absence of fraud or duress when the testator has the mental capacity to choose between his original intention and the wishes of the other person. *Morgan v. Ivey*, 222 Ga. 850, 852 (152 SE2d 833) (1967). Moreover, the testator's choice of one relative rather than another as the favored beneficiary is an insufficient reason alone to deny probate to the will. *Cornelius v. Crosby*, 243 Ga. 26, 28 (252 SE2d 455) (1979). Influence is undue "only when it constrains or coerces a person into doing that which his best judgment tells him not to do and deprives him of his free agency and substitutes the will of another person for his own." 1 D.H. Redfearn, Wills and Administration in Georgia, § 50 (S. Love 5th ed. 1988).

On a motion for judgment notwithstanding the verdict, the standard of review is whether there is any evidence to support the jury's verdict. *Lee v. Newman*, 240 Ga. 483 (241 SE2d 241) (1978).[1] This court must construe the evidence in the light most favorable to the party who obtained the jury verdict. *Pendley v. Pendley*, 251 Ga. 30, 31 (302 SE2d 554) (1983). Having construed the evidence most favorably towards the granddaughters, this court determines that there is no evidence to support the jury's verdict that the will and codicil of Sims were the product of the undue influence of his two surviving sons when he executed them.

The evidence shows that during the years 1987 and 1989 Sims had retired from the day-to-day management of Sims Asphalt Company, but was actively involved in other business transactions and traveled frequently. He maintained an office that he visited daily when in town, bought and sold land and other property, supervised the operation of a farm, and saw his lawyer and banker on at least a biweekly basis. Sims' banker described Sims as demanding and a hard negotiator, someone who did pretty much what he wanted and who could not be forced to do something he did not want to do. Similarly, the witnesses who testified concerning Sims' personal life portray him as a strong-willed, opinionated, energetic, and at times overbearing man. He lived with his second wife, whom he married in 1986 despite his children's disapproval, during much of the last nine years of his life. His personal physicians described him as decisive and "a character," with no signs of mental impairment or disorder.

Although the evidence shows that Sims influenced the actions of his sons and the sons influenced their father's actions, there is nothing in the record which shows that the evidence was undue at the time he executed the will and codicil. The will reasonably disposed of

---

[1] Although the federal courts have rejected the any evidence rule in favor of the reasonable person standard, it is unnecessary to address whether this court should adopt the federal standard since the granddaughters' evidence failed to meet even the less stringent state standard. See 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 50.02[1] (2d ed. 1992).

his property. It treated his four living children similarly, gave his eleven grandchildren the same bequest, and recognized the existence of his prenuptial agreement with his second wife. The attorney who drafted the will testified that Sims dropped by his office alone early in the morning on the average of once a week, on one visit brought a copy of the signed 1984 will that he wanted to revise, personally outlined the changes and additions to be made to the old will, and executed the 1987 will in the presence of the attorney and his secretary. The attorney further testified that Sims said he wanted all of his property to go to his children and wanted all of his grandchildren to receive the same thing. Other witnesses testified concerning similar statements made to them, including the sister of Sims' first wife who told Sims that she disagreed with his decision not to leave Marshall's share to his daughters. Like his banker, his lawyer stated that Sims knew what he was doing and personally directed the disposition of his estate as he desired in 1987.

The same attorney drafted the codicil in 1989 based on Sims' instructions. A witness to the codicil testified that Sims was of sound mind and reviewed the document before voluntarily signing it. No person accompanied Sims to his lawyer's office when he discussed and signed the 1987 will or the 1989 codicil. Based on these facts, the probate court should have granted the executors a judgment notwithstanding the verdict. See *Mitchell v. Hillsman*, 241 Ga. 289, 291 (244 SE2d 871) (1978) (affirming grant of summary judgment when no direct evidence of undue influence presented and testimony showed testator was of sound mind and freely signed her will without the presence of the person allegedly asserting undue influence).

The granddaughters base their claim of undue influence on three main events: the children's request that Sims obtain a prenuptial agreement to protect the family business and other assets accumulated during his 45-year marriage to his first wife, the transfer of assets in 1992 for half their market value from Sims Asphalt Company to a corporation owned by Edward's family nearly five years after the will and more than two years after the codicil were executed, and the mismanagement of Marshall's estate by Wayne as executor. The fact that Sims' children requested the prenuptial agreement, which was originally drafted at the same time as the 1984 will, is not evidence of undue influence in the disposal of his assets by the 1987 will and 1989 codicil. The testimony describing the transfer of assets from Sims Asphalt Company had, at most, marginal relevance on whether Sims' sons improperly influenced him years earlier when he executed his will. See *Akin v. Patton*, 235 Ga. 51, 54 (218 SE2d 802) (1975). Finally, the testimony concerning Wayne's handling of his brother's estate, which was highly prejudicial, was irrelevant to Sims' execution of his will and should have been excluded from the trial.

The only evidence that could be construed as undue influence is testimony that Edward had a physical fight with his father and Wayne and his wife told Sims that Marshall's estate would take care of his daughters for life. The fight, unidentified by time or subject matter, is insufficient evidence of undue influence in 1987 and 1989 when the documents were executed. See *Russell v. Fulton Nat. Bank*, 248 Ga. 421, 423 (283 SE2d 879) (1981) (evidence that first wife threatened testator with bodily harm if he did anything for daughter of second wife "raised no inference of undue influence at the time of execution of the will"). Similarly, the disputed testimony concerning Wayne's statements about Marshall's estate fails to rise to the level of fraud necessary to set aside a will for undue influence, which must subjugate the testator's will. See *Pendley*, 251 Ga. at 31 (contention that fourth wife and sole beneficiary of will expressed dislike for testator's children of previous marriages several times over 15-year period fails to show wife substituted her own will for her husband's wishes). Sims had independent knowledge of Marshall's estate since he jointly owned property with it, advised Wayne on investing the estate's money, and had the opportunity to investigate the size of the estate at any time. Because the granddaughters did not present any evidence that Edward or Wayne destroyed the free agency of their father and coerced him into acting contrary to his desires when the will and codicil were executed, the executors are entitled to a judgment notwithstanding the verdict.

*Judgment reversed. All the Justices concur.*

DECIDED JANUARY 30, 1995 —
RECONSIDERATION DENIED FEBRUARY 21, 1995.

*Chesnut & Livingston, Tom Pye,* for appellants.
*Caldwell & Watson, Harmon W. Caldwell, Jr., R. Scott Berryman, Wade H. Watson III,* for appellees.