S95A0855, S95X0856. YANCEY v. HALL et al.; and vice versa.
(458 SE2d 121)

CARLEY, Justice.

These cases arise from a contest over the validity of the will of the late Earl Harris. Kyle Yancey is the named executor under Harris' will. Price Hall and Christie Hall Gulledge (Caveators) are Harris' nephew and niece.

Yancey and Harris were neighbors. When Harris expressed to Yancey a concern about dying intestate, Yancey, who is an attorney, offered to draft a will without charge, if Harris would furnish the name of his proposed executor and the specifics of his testamentary plan. In a subsequent conversation, Harris indicated that the person who was his choice for executor had declined to serve and Yancey offered to serve temporarily in that capacity until such time as Harris could name a replacement. Harris did not accept Yancey's offer immediately. In 1988, however, Yancey received a call informing him that Harris had been hospitalized and wished to see him. Yancey went to the hospital where Harris accepted the will-drafting offer. As for his specific bequests, Harris indicated that he wanted his niece to receive $50,000 and his nephew to receive only $1,000. The smaller bequest was based upon Harris' expressed belief that his nephew was "a ne'er-do-well who drank a lot." As for the remainder of his estate,

---

[5] OCGA § 19-9-3 (a).

Harris indicated a wish that it be used for charitable purposes. Yancey suggested the Baptist Children's Home as a possible recipient of the charitable bequest and Harris agreed with that suggestion. Yancey drafted the will in accordance with the testamentary wishes expressed by Harris and Harris executed the will. Harris was released from the hospital a short time later and lived until 1993 without ever changing any of the provisions of the will.

In his capacity as the named executor, Yancey offered the will for probate. Caveators challenged the will on various grounds, but the probate court entered judgment in favor of Yancey upholding the will. On appeal, the superior court granted summary judgment in favor of Yancey upholding the will, but also ordered that Yancey be removed as executor and a successor be appointed. In Case No. S95A0855, Yancey appeals and, in Case No. S95X0856, Caveators cross-appeal.

### Case No. S95A0855

1. Yancey urges that the superior court erred in removing him as executor of the will.

The issue of Yancey's removal as executor was never raised and addressed in the probate court. The only issue that was raised and addressed in that court was the validity of the will itself. Since the sole question for determination in the probate court was the validity of the will itself, the jurisdiction of the superior court on appeal would be limited to the merits of that same issue. *Foster v. Allen*, 201 Ga. 348 (1) (40 SE2d 57) (1946).

Caveators urge that the issue of Yancey's removal was raised properly in the superior court because they amended their caveat in that court so as to request "any and further relief that the Court may deem just and equitable. . . ." OCGA § 15-9-89 provides that "[t]he petition and caveat shall be amendable at all times and in every particular" and, pursuant to that statute, Caveators "could amend their appeal in the superior court by the amplification of their ground[s] of caveat in the [probate] court. . . ." *Payne v. Payne*, 229 Ga. 822, 824 (1) (194 SE2d 458) (1972). See also *Lee v. Wainwright*, 256 Ga. 478 (350 SE2d 238) (1986). However, the issue of Yancey's removal as executor is distinct and separate from the issue of the validity of the will itself and, where the removal issue was never raised and addressed in the probate court, that issue cannot be raised by amendment on appeal to the superior court.

A different question would have been presented if a petition to remove [Yancey] because he was "unfit for the trust reposed in him" had been filed [in the probate court] under

[OCGA § 53-7-148]. . . . Under such circumstances, the petition would be the pleading and would authorize the introduction of evidence on the alleged fact of unfitness, and if the [probate court], after the introduction of the evidence, in [its] discretion, found adversely to [Caveators], then, on appeal to the superior court, "the trial in the superior court is (to be) had without reference to the evidence introduced in the former trial." [Cit.]

*Wofford v. Vandiver*, 72 Ga. App. 623, 627 (34 SE2d 579) (1945) (cited with approval in *Bloodworth v. Bloodworth*, 240 Ga. 614, 615, fn. 2 (241 SE2d 827) (1978)).

Caveators further urge that the issue of Yancey's removal was raised properly in the superior court because the amendment to their caveat invoked "the power of a court of equity to supervise the administration of an estate to see that justice is done." *Wells v. Scott*, 210 Ga. 756, 761 (5) (82 SE2d 697) (1954). However, the superior court was not sitting as a court of equity, but as an appellate court. Thus, Caveators' amendment could not serve to invoke the superior court's equitable jurisdiction, "since the superior court as an appellate court here has only the jurisdiction of the [probate] court . . ., which has no equitable powers in such a case. [Cits.]" *Byrd v. Riggs*, 209 Ga. 59, 60 (2) (a) (70 SE2d 755) (1952).

It follows that the order removing Yancey as executor must be reversed, since the superior court had no jurisdiction to address that issue.

### Case No. S95X0856

2. Caveators urge that summary judgment was erroneously granted because a genuine issue of material fact remains as to Yancey's fraud and undue influence.

Yancey never offered to employ any estate planning skills on Harris' behalf, but merely to draft a will giving effect to the testamentary plan that Harris had chosen for himself. There is no contention that Yancey did not do so. His alleged fraud consists solely of the failure to have informed Harris of the powers that an executor can exercise and the amount of fees that an executor can receive. However, the failure to make a disclosure in this regard would not have affected Harris' testamentary plan "to the injury of" Caveators. OCGA § 53-2-7. Under the undisputed evidence, Harris did not wish to die intestate and, therefore, an executor necessarily would have to be named to carry out his testamentary plan. At most, Yancey's nondisclosure could have a potential effect on his service as the executor and, as previously discussed, the superior court had no jurisdiction to

address the issue of Yancey's removal from that position. It follows that the superior court correctly granted summary judgment in favor of Yancey as to this issue, since Caveators' allegations of fraud go only "to matters which do not appear to have had any bearing or influence upon [Harris] in the making of [his] will. . . ." *Marlin v. Hill*, 192 Ga. 434, 440 (15 SE2d 473) (1941).

Caveators' contention that Yancey exercised undue influence is based upon Harris' naming of the Baptist Children's Home as the beneficiary of the remainder of his estate. However, it is undisputed that Yancey did not suggest that Harris devise the remainder of his estate to charity. That was entirely Harris' own desire. Yancey merely suggested the Baptist Children's Home as a specific beneficiary of Harris' charitable bequest and Harris adopted that suggestion as his own by naming that institution as his designated charitable beneficiary. It follows that the superior court correctly granted summary judgment in favor of Yancey as to this issue, since the giving of " '[m]ere advice or suggestions addressed to the sound judgment of the testator, and in a general way, and considered by him,' " does not constitute undue influence. *Dean v. Littleton*, 161 Ga. 651, 654 (131 SE 507) (1926). An influence " 'becomes undue so as to invalidate a will only when it is extended to such a degree as to override the discretion and destroy the free agency of the testator.' " *Dean v. Littleton*, supra at 654.

3. Caveators urge that summary judgment was erroneously granted because a genuine issue of material fact remains as to Harris' lack of testamentary capacity.

Caveators rely upon expert opinion that, during his hospitalization, Harris received medications which could have affected his mental capacity. However, the expert opinion of Harris' own physician was that the medications did not have that effect and the undisputed testimony of the subscribing witnesses showed that Harris had sufficient testamentary capacity at the time he executed the will. It follows that the superior court correctly granted summary judgment in favor of Yancey as to this issue, since "[t]he evidence in the case did not make an issue as to the mental capacity of the testator to make a will. . . . [Cits.]" *Gornto v. Gornto*, 217 Ga. 136, 141 (1) (121 SE2d 139) (1961). Compare *Kievman v. Kievman*, 260 Ga. 853 (400 SE2d 317) (1991).

4. With regard to Harris' $1,000 bequest to his nephew, Caveators urge that summary judgment was erroneously granted because a genuine issue of material fact remains as to the validity of that provision of the will.

There was evidence that Harris' nephew had not had a drink in 20 years and had held a regular job until retirement. The contention is that, based upon this evidence, a jury could find that Harris' ex-

pressed belief that his nephew was "a ne'er-do-well who drank a lot" was a "mistake of fact" as to the conduct of the nephew within the meaning of OCGA § 53-2-8. However, in order for Harris' belief to be a "mistake of fact" within the meaning of that statute, it must have been a mistake arising from his mere ignorance. OCGA § 53-2-8 has no application to a mistake resulting " 'from an error of judgment after investigation or from negligent or wilful failure to make a proper investigation by means of which the truth could be readily and surely ascertained. . . .' [Cits.]" *Thornton v. Hulme*, 218 Ga. 480, 486 (3) (128 SE2d 744) (1962).

The evidence is undisputed that Harris' belief did not arise from his mere ignorance. According to the nephew's own testimony, he lived less than a mile from Harris and they saw each other on a daily basis. Thus, if Harris made his $1,000 bequest in the belief that his nephew was "a ne'er-do-well who drank a lot,"

> he deliberately arrived at his conclusion of fact after an investigation satisfactory to himself, without choosing, as he might easily have done, to make one more thorough and searching. That his conclusion was wrong affords no cause for destroying his testamentary scheme.

*Young v. Mallory*, 110 Ga. 10, 12 (35 SE 278) (1900).

5. Caveators urge that summary judgment was erroneously granted because all of the evidence introduced in the probate court was not in the record before the superior court.

Under Uniform Probate Court Rule 9.3, if Caveators wished the superior court to consider evidence that had been introduced in the probate court, the burden was on them to present that evidence to the superior court. Accordingly, if the superior court granted Yancey's motion for summary judgment on the basis of a record which did not contain all of the evidence introduced in the probate court, the absence of that evidence would be attributable to Caveators and would not be a ground for reversal. The superior court was authorized to consider Yancey's motion based upon all of the evidence that had been presented to it and to grant his motion if that evidence so authorized. OCGA § 9-11-56 (c).

6. Caveators' remaining enumerations of error have been considered and, to the extent that those enumerations may not have been rendered moot by virtue of our previous holdings, they are found to be without merit.

*Judgment affirmed in Case No. S95X0856 and reversed in Case No. S95A0855. All the Justices concur.*

DECIDED JUNE 12, 1995.
Wills. Paulding Superior Court. Before Judge Fudger.
*Terence G. Kelly,* for appellant.
*Glen E. Stinson,* for appellees.