## S95A1515. BISHOP v. KENNY.
(466 SE2d 581)

HINES, Justice.

May Madison Bishop died on March 1, 1993, at the age of 86. In a will, executed on June 5, 1990, she bequeathed her entire estate to her niece, Pauline Kenny (Kenny). When Kenny offered the will for probate in solemn form, the testatrix's granddaughter and legal guardian, Mary Anton Bishop (Bishop), filed a caveat to the probate of the will, alleging that it was the product of the undue influence of Kenny, and that the testatrix lacked testamentary capacity at the time the will was executed. After a bench trial, the probate court determined that the evidence established that the testatrix had testamentary capacity when she executed the 1990 will, and ordered that it be probated in solemn form. Bishop appeals the probate court's order denying her caveat.

1. Contrary to Bishop's assertions, the probate court did not err by excluding testimony regarding Bishop's reasons for becoming the testatrix's guardian two years after the execution of the 1990 will. Bishop argued that the testimony was admissible to establish the testatrix's mental capacity at the time the will was executed. "[T]estimony relating to a reasonable period of time before and after the execution of the will may be introduced to show the testator's state of mind at the time of execution." *Estes v. Perkins,* 239 Ga. 636 (3) (238 SE2d 423) (1977). The probate court admitted expert testimony that the testatrix was diagnosed with degenerative dementia approximately three months after the execution of the will. However, testimony concerning the testatrix's diminished mental capacity two years after the execution of the will was too remote. See *Estes,* supra (testimony regarding mental condition of testator *four months* after execu-

tion of the will deemed too broad a line of inquiry).

2. Bishop contends that the probate court erred in excluding testimony concerning the source of and history surrounding the testatrix's real property. This Court has long held that:

> where there is an issue of fact as to the testamentary capacity of the maker of a will, evidence showing the source from which property disposed of by the will came into the decedent's possession is relevant and material to show whether the provisions of the will are just and reasonable, and accord with the state of the testator's family relations.

*Cook v. Sheats*, 222 Ga. 70, 73 (148 SE2d 382) (1966). The record shows that the probate court received testimony that the real property involved was purchased by the testatrix and her husband as part of a larger parcel of property. Other testimony admitted established that the testatrix and her husband divided the larger parcel and deeded a lot to their son, and later deeded a lot to their grandson. The transcript of the trial indicates that Bishop sought to introduce testimony concerning her belief that she and her brother were going to receive the testatrix's real property. Since that testimony concerned neither the source of the testatrix's property, nor the testamentary capacity of the testatrix at the time she executed the will, the probate court did not err in excluding the testimony as irrelevant.

3. Bishop also contends that the probate court erred in excluding testimony regarding the existence and contents of a prior will in which she claims the testatrix bequeathed her estate to her son, and then to her grandchildren. This contention fails.

The attorney who drafted the 1990 will testified that he destroyed the original of a prior will of the testatrix, but retained a copy of the prior will in his files. He produced the copy of the will for the court, and testified that the testatrix, in the prior will, left her entire estate to her husband, and if he predeceased her, then to her son. Bishop sought to introduce testimony about an alleged "second" prior will, which purportedly made a substantially different disposition of the testatrix's estate than the other prior will and the 1990 will. However, the record in no way indicates that Bishop tendered the second prior will, or explained its absence. Accordingly, the probate court sustained Kenny's "best evidence rule" objection and disallowed the proffered testimony.

It is true that this Court has encouraged admitting a "wide latitude" of evidence where a testatrix's mental capacity to make a will is in question, or the issue of undue influence has been raised. *Ambler v. Archer*, 230 Ga. 281, 291 (196 SE2d 858) (1973).

> If it can be said that evidence of a prior will in any manner tends to throw light on the mental capacity of the testatrix at the time she executed the will in question or on the question of undue influence in procuring the subsequent will then evidence as to such prior will would certainly be admissible.

*Ambler*, supra at 291. However, *Ambler* did not create an exemption to all requirements of admissibility respecting prior wills.

OCGA § 24-5-4 requires that "[t]he best evidence which exists of a writing sought to be proved shall be produced, unless its absence shall be satisfactorily accounted for." This rule is applicable "only where the contents of the writings are in issue." *Pryor v. State*, 238 Ga. 698, 707 (234 SE2d 918) (1977). See also *Young v. State*, 226 Ga. 553 (176 SE2d 52) (1970). Although Bishop did not seek to introduce testimony about the alleged second prior will to establish the testatrix's testamentary disposition, the contents of this alleged prior will were nonetheless placed in issue by Bishop. Counsel for Bishop specifically questioned witnesses concerning the contents of the alleged prior will. Accordingly, Bishop was required to either produce the will or satisfactorily explain its absence. See *Webster v. Brown*, 213 Ga. App. 845, (4) (446 SE2d 522) (1994) (contents of document determined to be at issue, and invocation of the best evidence rule applicable, where witness questioned respecting the contents of the document). Because Bishop did neither, the probate court did not err in excluding the testimony.

4. Bishop lastly contends that the evidence overwhelmingly supported a finding of lack of testamentary capacity and undue influence by Kenny. We disagree.

(a) As evidence of the testatrix's contended mental incapacity, Bishop, her brother, her former husband, and a family friend all testified that the testatrix was forgetful and exhibited repetitive mannerisms both before and after execution of the 1990 will. Kenny agreed. Dr. Emmett Bishop, a psychiatrist, testified that, on August 30, 1990, he diagnosed the testatrix as having primary degenerative dementia and generalized anxiety disorder. He opined that she may have been in that same clinical state as long as six months prior to diagnosis. However, he also acknowledged that the testatrix could have made reasoned decisions during June of 1990.

In support of probate of the 1990 will, numerous family members and friends testified that in the month preceding the execution of the will they conversed with the testatrix at her son's funeral. Each stated that the testatrix recognized him or her, conversed in normal fashion, and appeared appropriately distraught over her son's death. Moreover, the only witnesses who testified as to the testatrix's mental capacity at the time she executed the will were Kenny, the attorney who

drafted the will, and his associate. The attorney testified that he spent seven hours with the testatrix on the day the will was executed. He stated that the testatrix told him that she needed to prepare a new will because no one was left as a beneficiary in her then existing will since her son's death. He further explained that she acknowledged the existence of her grandchildren, but knowingly and freely indicated that she wished to leave her estate to Kenny because of their close relationship. The attorney's associate, who witnessed the execution of the will, similarly testified.

Although testimony was introduced that the testatrix exhibited forgetfulness and anxiety in her advanced years, this did not demand that the factfinder, the probate court, conclude that the testatrix lacked testamentary capacity. OCGA § 53-2-25. Rather, "[t]he amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the testator to have a decided and rational desire regarding the disposition of his property." OCGA § 53-2-21 (b). The testimony of Dr. Bishop, who examined the testatrix three months after she executed the 1990 will, can be construed to support the probate court's finding that the testatrix was capable of reasoned choice at the time she executed the will. Furthermore, the testatrix's recognition of relatives, and her ability to articulate reasons she desired to execute a new will and leave her estate to Kenny, demonstrated a decided and rational desire regarding the disposition of her property. See *Spivey v. Spivey*, 202 Ga. 644 (2) (44 SE2d 224) (1947).

(b) In support of her argument that the 1990 will was the product of undue influence by Kenny, Bishop established that Kenny drove the testatrix to the attorney's office to execute the will while Bishop and her family were on vacation. However,

> "[i]t is insufficient to show merely that the persons receiving substantial benefits under the instrument sought to be propounded occupied a confidential relationship to the testator and had an opportunity to exert undue influence." [Cit.]

*Dean v. Morsman*, 254 Ga. 169, 173 (2) (327 SE2d 212) (1985). See also *Sims v. Sims*, 265 Ga. 55 (452 SE2d 761) (1995); *McGee v. Ingram*, 264 Ga. 649 (448 SE2d 439) (1994). The attorney testified that although Kenny was present during the execution of the 1990 will, she did not interject her desires respecting the testatrix's testamentary disposition in any fashion. Having failed to establish that the influence of Kenny upon the testatrix amounted to "force or fear," or "destroy[ed] . . . [her] free agency," thereby constraining her to act against her will, Bishop's claim of undue influence fails. (Citations omitted.) *Morsman*, supra at 173.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 12, 1996.

*Virginia E. Patterson,* for appellant.
*Brennan & Wasden, Joseph P. Brennan,* for appellee.