S02A0949. DUNCAN et al. v. MOORE et al.
(571 SE2d 771)

BENHAM, Justice.

On November 9, 1998, testatrix Elva Tatum executed a will in which she left her home, its contents, and its 27-acre site to appellees Mattie and Oval Moore, neither of whom was related to the testatrix. Ms. Tatum died May 27, 1999, at the age of 82, without a spouse or children. The Moores filed a petition to probate the will and appellants, several nieces and nephews of the testatrix, filed a caveat. The probate judge sustained the caveat after finding the Moores had exercised undue influence over the testatrix to the extent that the will offered for probate was not the product of the testatrix's free and voluntary act. Appellees appealed the probate court's decision to the Superior Court of Dade County, which held a jury trial on the issue in April 2001. The jury returned a verdict in favor of the propounders of the will, and the trial court entered a judgment in accordance with the verdict. The relatives then filed this appeal.

1. Appellants contend the trial court committed reversible error

[5] *Russell v. State*, 269 Ga. 511, 511 (501 SE2d 206) (1998).
[6] 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

by admitting the will into evidence before the testimony of the witnesses to the will and before it was established that the will was executed with the proper formalities. Attached to the will offered for probate was a self-proving affidavit and certificate executed by the testatrix, the two witnesses to the will, and a notary public. See OCGA § 53-4-24. The self-proving affidavit, which is a sworn statement that the will has been duly executed, creates a rebuttable presumption that the requirements of signature and attestation were met without the need for live testimony or affidavits from the will's witnesses. *Westmoreland v. Tallent*, 274 Ga. 172 (1) (549 SE2d 113) (2001); *Singelmann v. Singelmann*, 273 Ga. 894 (1) (548 SE2d 343) (2001); Radford, Redfearn Wills and Administration in Georgia (6th ed. 2000) § 5-8, pp. 96-97. In light of the presence of the self-proving affidavit, the will could be admitted to probate (and into evidence) without the testimony of the subscribing witnesses or other proof that the formalities of execution were met. Id. See also OCGA § 53-4-24 (c), which states that "[a] self-proved will or codicil may be admitted to probate without the testimony of any subscribing witness. . . ."

2. After the will and self-proving affidavit were admitted into evidence, the attorney who drafted the will and served as the notary public and the two subscribing witnesses testified about the circumstances surrounding the signing and attestation of the testatrix's will. Neither the attorney nor either witness had an independent recollection of this particular will, and the caveators objected to their testimony concerning the attorney's history of asking the two witnesses, employees of an insurance agency near the attorney's office, to serve as witnesses, and the attorney's procedure once the witnesses and testator met. On appeal, caveators contend the admission of the evidence was prejudicial and manifestly unjust because there was no proof that the testatrix's will was signed by her and executed with the required formalities. However, the testimony of the witnesses to the will on this point was unnecessary because, as noted in Division 1, the self-proving affidavit attached to the will created a presumption, subject to rebuttal, that the requirements of signature and attestation were met. *Westmoreland v. Tallent*, supra, 274 Ga. at 174. The caveators were entitled to rebut the presumption and they attempted to do so by cross-examining the drafting attorney and the attesting witnesses. Since the testimony complained of was, in effect, cumulative of the self-proving affidavit and caused no harm, we cannot say the trial court committed reversible error in admitting it.

3. Appellants next contend the evidence was insufficient to support the jury verdict because the Moores were in a confidential relationship with the testatrix and the presumption of undue influence that accompanies that relationship was not overcome by the Moores.

"Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another. . . ." OCGA § 23-2-58. While some confidential relationships are created by law and contract, others may be created by the facts of the particular case (*Cochran v. Murrah*, 235 Ga. 304, 306 (219 SE2d 421) (1999)), making the question of whether a confidential relationship exists one for the jury. Id.; *Yarbrough v. Kirkland*, 249 Ga. App. 523 (2) (548 SE2d 670) (2001). "Influence is undue 'only when it constrains or coerces a person into doing that which his best judgment tells him not to do and deprives him of his free agency and substitutes the will of another person for his own.' [Cit.]" *Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995). Evidence showing only that one who received a substantial benefit under the will had an opportunity to influence the testatrix does not establish the exercise of undue influence. *Quarterman v. Quarterman*, 268 Ga. 807 (2) (493 SE2d 146) (1997). The question of undue influence is also one for the factfinder. *Mathis v. Hammond*, 268 Ga. 158 (3) (486 SE2d 356) (1997). If there is any evidence to support the jury's verdict, it will be affirmed. See *Lowry v. Hamilton*, 268 Ga. 373 (2) (489 SE2d 827) (1997).

The propounders of the will presented the testimony of several long-time friends of the testatrix who had been in daily contact with her by telephone or personal visits at the time she executed her will, and the witnesses described the testatrix as a strong-willed, competent woman who was not under anyone's influence. Mrs. Moore's supervisor, who had visited the testatrix two or three months after she executed the will, described the testatrix as "very competent," "sharp as a tack," and not under anyone's influence. An attorney who visited the testatrix in the hospital the day before she died (six months after she executed the will) testified she was not suffering any mental disability and did not appear to be under duress. The attorney who drafted the testatrix's will and served as the notary public on the self-proving affidavit testified he would not have signed the affidavit as notary if the testatrix had not been "of sound mind and disposing memory." One of the testatrix's friends who was aware of the testatrix's testamentary intentions testified the testatrix had told her that appellees were "the only ones who had treated her right." Since there was evidence to support the jury's conclusion that the testatrix's will was not the product of undue influence, the trial court did not err when it entered judgment on the jury's verdict.

4. Appellants next contend the trial court erred when it declined to admit into evidence documents appellants proffered to rebut the cross-examination of one of their witnesses who had asserted on direct that appellee Oval T. Moore had performed work while on disa-

bility. " 'The admission of evidence is generally committed to the sound discretion of the trial court whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion.' [Cit.]" (Citation and punctuation omitted.) *White v. Regions Bank*, 275 Ga. 38, 41 (2) (a) (561 SE2d 806) (2002). We see no abuse of discretion in the trial court's ruling.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 28, 2002.

*Joseph E. Willard, Jr.*, for appellants.
*Lindsay H. Bennett, Jr.*, for appellees.