## S05A0910. TROTMAN v. FORRESTER.
(621 SE2d 724)

SEARS, Chief Justice.

This case involves a dispute over the validity of the will of Ms. Katherine Forrester. The appellant, W. A. Trotman, petitioned to probate Ms. Forrester's will, and the appellee, Bron Forrester, one of Ms. Forrester's sons, filed a caveat. Following a bench trial, the trial court entered a judgment setting aside Ms. Forrester's will on the ground that another one of her sons, Cliff Forrester, who is a beneficiary under the will, had a confidential relationship with the testator and had exercised undue influence over her. Trotman appeals from the trial court's judgment. Because there is some evidence supporting the trial court's judgment, we affirm.

" 'Undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency.' "[1] Undue influence may be shown by a wide range of evidence, "as such influence can seldom be shown except by circumstantial evidence."[2] Moreover, evidence showing that a testator has a weakened mental state is relevant to the issue of undue influence, as the influence necessary to dominate a weak mind is less than that necessary to dominate a strong one.[3] Another factor that may support a finding of undue influence is evidence of a confidential

---

[1] *Sims v. Sims*, 265 Ga. 55 (452 SE2d 761) (1995).

[2] *Sullivan v. Sullivan*, 273 Ga. 130, 132 (539 SE2d 120) (2000).

[3] Id. at 133; *Murchison v. Smith*, 270 Ga. 169, 171-172 (508 SE2d 641) (1998).

relationship between the testatrix and the party alleged to have influenced the testatrix.[4] A confidential relationship may be found to exist when the evidence shows that a party was capable of exerting power of leadership or a controlling influence over a submissive testator.[5] Finally, whether a confidential relationship exists and whether someone has exerted undue influence over a testator are questions for the trier of fact (here, the trial court),[6] and if there is any evidence to support the trier of fact's determination, it will be affirmed.[7]

In the present case, there is sufficient evidence to support the trial court's ruling. To begin, there was ample evidence that Ms. Forrester suffered from a diminished mental capacity beginning shortly after her husband's death in January 1997 until the execution of the will in November 1998. A psychiatrist who examined Ms. Forrester in February 1997, when she was 79 years old, testified that her short term memory was very poor, that she was suffering from dementia of the "Alzheimer's type," and that there was not much likelihood of improvement in her condition. Similarly, a psychologist who examined Ms. Forrester in September 1997, determined that Ms. Forrester suffered mild dementia, anxiety, and depression, and that he did not believe that her condition would improve over time.

Numerous relatives and friends also testified about Ms. Forrester's diminished mental capacity. A nephew of Ms. Forrester's testified that the attorney who drafted Ms. Forrester's will asked him if he would serve as executor. He testified that he refused to do so because Ms. Forrester, in his opinion, was incompetent to make a will. According to the nephew, his father, Ms. Forrester's brother, had Alzheimer's disease, as did all of Ms. Forrester's siblings, and he thought Ms. Forrester was exhibiting signs of the disease. He added that, one day in the fall of 1998, he saw her walking along the side of the road and stopped to speak with her, but that she did not recognize him. One of Ms. Forrester's nieces testified that, in the summer of 1998, Ms. Forrester was stopped by the police while she was driving her car. The niece stopped to assist, and learned that Ms. Forrester was attempting to enter an interstate highway going in the wrong direction. She added that she believed that Ms. Forrester suffered from Alzheimer's disease in the fall of 1998.

As for evidence of undue influence, there was evidence that Ms. Forrester hired one attorney to assist her in her overall estate plan

[4] *Skelton v. Skelton*, 251 Ga. 631, 634 (308 SE2d 838) (1983).
[5] *Holland v. Holland*, 277 Ga. 792, 793-794 (596 SE2d 123) (2004).
[6] *Skelton*, 251 Ga. at 634; *Duncan v. Moore*, 275 Ga. 656, 658 (571 SE2d 771) (2002).
[7] *Duncan*, 275 Ga. at 658.

and another attorney to assist in drafting her will. The attorney who assisted in the estate plan reviewed the drafts of the will prepared by the other attorney. The estate attorney stated that, although ostensibly Ms. Forrester was his client, he first met with Cliff Forrester without Ms. Forrester being present; that he only talked with Ms. Forrester twice, once in his office and once on the phone; that during both of his discussions with Ms. Forrester, Cliff participated; and that he spoke with Cliff nine times alone about his mother's estate. Moreover, the trial court properly found that notes made by the estate attorney regarding statements by Cliff to him regarding his mother's will bear a similarity to items in Ms. Forrester's will. Although the attorney who drafted Ms. Forrester's will testified that he did not believe that Cliff exercised influence over Ms. Forrester, he acknowledged that Cliff tried to do so, but that he (the attorney) did not believe that Cliff was successful. The attorney also testified that Cliff tried to control the attorney.

In addition, numerous witnesses testified that, shortly after the death of Ms. Forrester's husband, Cliff isolated Ms. Forrester from her family and friends, prohibiting her from talking to people on the phone or in person. Cliff also testified that, around the time the will was executed, he was with Ms. Forrester 24 hours a day, seven days a week.

Another niece of Ms. Forrester, Glenda Maher, testified that she took Ms. Forrester to sign her will and that she was present when the will was executed. She had also gone with Ms. Forrester to a prior meeting with Ms. Forrester's attorney when the will was discussed and to a doctor's appointment for a guardianship determination. Moreover, while other relatives and friends of Ms. Forrester's testified that Cliff would not let them speak with Ms. Forrester, Ms. Maher testified that she could call or walk up to Ms. Forrester's and Cliff's house at any time. There was also testimony that, one time in the fall of 1998, Bron Forrester and his sister, Eloise Cirelli, took Ms. Forrester out to eat, and that, at Cliff's request, Ms. Maher followed them to the restaurant, sat outside, and observed them. In addition, several witnesses testified that Ms. Maher "took sides" with Cliff and that she assisted Cliff in isolating Ms. Forrester from her family and friends. Finally, one of the witnesses to the will testified that, during the execution of the will, Ms. Maher initially stood behind Ms. Forrester and then sat beside her.

Given the evidence of Ms. Forrester's weakened mental condition, given Cliff Forrester's participation in Ms. Forrester's estate planning, given the evidence that Cliff isolated Ms. Forrester from her friends and relatives, and given the evidence that Ms. Maher assisted Cliff in his efforts regarding Ms. Forrester and was present and sat beside her when Ms. Forrester executed her will, we conclude

that the evidence supports the trial court's determinations that Ms. Forrester suffered from a weakened mental state, that Cliff had a confidential relationship with Ms. Forrester, and that he exerted undue influence over her when she executed her will.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 2005.

*Caudell & Hotard, B. Chan Caudell*, for appellant.
*Sanders & Smith, Russell W. Smith*, for appellee.