**FOURTH DIVISION
DILLARD, P. J.,
BROWN and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

October 11, 2024

# In the Court of Appeals of Georgia

A24A0702. IN RE ESTATE OF TOONKEO FLOURNOY, DECEASED.

PADGETT, Judge.

This case involves a dispute among family members of Toonkeo Flournoy ("Decedent") concerning the distribution of her estate. Decedent's sister, petitioner Lanoi Phomlavan ("Petitioner"), appeals following a jury verdict and judgment in favor of Decedent's son and daughter, Timothy Flournoy and Sandy Vongdasy (collectively, "Caveators"). On appeal, Petitioner argues that the probate court erred in denying her requests to exclude certain evidence, and the court improperly instructed the jury. Because we discern no error in the probate court's rulings on Petitioner's requests to exclude certain evidence, we affirm in part. However, the probate court improperly instructed the jury on spoliation of evidence. Therefore, for

the reasons explained more fully below, we reverse the probate court's judgment and remand this case for a new trial.

Viewed in the light most favorable to the verdict,[1] the record shows that in January 2021, Decedent contracted COVID-19 and was hospitalized. During her hospitalization, Decedent executed a will ("2021 will"), which bequeathed half of her estate to Caveators and half, divided equally, to her sisters, including Petitioner. Decedent passed away in March 2021.

Following Decedent's death, Petitioner petitioned to probate the 2021 will. In response, Caveators filed separate caveats to the will, alleging that Decedent lacked testamentary capacity at the time the will was executed, and the will was the product of fraud and undue influence. To support their arguments, Caveators pointed to various facts that primarily occurred during Decedent's hospitalization. Following discovery and prior to trial, Petitioner filed a motion in limine and objections to Caveators' proposed trial exhibits, seeking to exclude, as relevant to this appeal, an unsigned copy of Decedent's prior 2006 will ("2006 will") and evidence related to the revocation of a power of attorney that Decedent previously granted to Petitioner.

---

[1] *Meadows v. Beam*, 302 Ga. 494, 495 (1) (807 SE2d 339) (2017).

The trial court denied Petitioner's requests, but it gave a limiting instruction regarding the jury's consideration of the evidence related to the revocation of the power of attorney. Subsequently, the jury found in favor of Caveators and determined that the 2021 will was invalid. The probate court entered judgment in favor of Caveators, and this appeal follows.

(1) *Evidentiary Issues*

"The admission of evidence is generally committed to the sound discretion of the trial court whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." *Duncan v. Moore*, 275 Ga. 656, 659 (4) (571 SE2d 771) (2002) (citation and punctuation omitted).

Before trial, Petitioner sought to exclude an unsigned copy of Decedent's 2006 will, which stated that, in the event her husband did not survive her,[2] Decedent bequeathed her estate equally to Caveators.[3] Petitioner also sought to exclude evidence related to the revocation of a power of attorney that Decedent previously granted to Petitioner. For context, while hospitalized in January 2021, Decedent

---

[2] Decedent's husband died the year before Decedent.

[3] An executed version of the 2006 will is not in the record.

executed a durable power of attorney, appointing Petitioner as her agent. Eight days after the execution of the 2021 will, Decedent executed a document that revoked the January 2021 power of attorney.

Petitioner argued that the probate court should exclude the 2006 will and evidence related to the revocation of the power of attorney because they were not relevant to the issues before the jury, namely testamentary capacity, undue influence, fraud, and mistake, in light of the court's determination that the 2021 will had not been revoked and the limited issue for the jury's determination–the validity of the 2021 will. The probate court denied Petitioner's requests, determining the documents and related evidence were relevant and their admission was not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The 2006 will and evidence related to the revocation of the power of attorney were introduced at trial and discussed by witnesses.

(a) *The 2006 Will*

Petitioner argues the probate court abused its discretion by denying her request to exclude the 2006 will because the 2006 will was irrelevant to the issues at trial.

Petitioner asserts the 2006 will was "of no consequence" because the 2021 will specifically revoked all prior wills. We disagree.

As cited by Petitioner, some cases in Georgia have provided that the fact that a testatrix has previously executed a will that devised assets for a caveator "is of no consequence" because a probated will specifically revoked all prior wills. See *Johnson v. Burrell*, 294 Ga. 301, 304 (2) (751 SE2d 301) (2013); *Lawson v. Lawson*, 288 Ga. 37, 38 (1) (701 SE2d 180) (2010); *Lipscomb v. Young*, 284 Ga. 835, 837 (672 SE2d 649) (2009). However, other cases have held that "prior wills may be admitted in cases alleging that the testat[rix] was unduly influenced in executing the will in question." *Horton v. Hendrix*, 291 Ga. App. 416, 421 (2) (662 SE2d 227) (2008); see *Bishop v. Kenny*, 266 Ga. 231, 233 (3) (466 SE2d 581) (1996) (earlier wills may "throw light on the mental capacity of the testatrix at the time she executed the will in question or on the question of undue influence in procuring the subsequent will") (citation omitted).

We are unpersuaded that *Johnson*, *Lawson*, and *Lipscomb* stand for the blanket proposition that a prior will is inadmissible as a matter of law. Instead, a "broad range of circumstantial evidence" can be considered by the fact-finder and "wide latitude" must be afforded to evidence in a case involving claims of undue influence. *Horton*,

5

291 Ga. App. at 420-421 (2) (a) (citations and punctuation omitted). Accord *Bishop*, 266 Ga. at 232 (3); *In re Estate of Henry*, 366 Ga. App. 638, 640 (1) (883 SE2d 855) (2023) ("[O]ur Supreme Court has explained that 'the existence and effective power of undue influence can rarely be shown except by circumstantial evidence.' Thus, an attack on a will as 'having been obtained by undue influence may be supported by a wide range of testimony, including evidence of a confidential relation between the parties, the reasonableness or unreasonableness of the disposition of the testat[rix]'s estate, old age, or disease affecting the strength of the mind.'") (citations omitted). To conclude that the revocation of prior wills renders those prior wills inadmissible as a matter of law contradicts the holdings in *Horton*, 291 Ga. App. at 420-421 (2) (a), *Bishop*, 266 Ga. at 232-233 (3), *Ambler v. Archer*, 230 Ga. 281, 290-291 (2) (196 SE2d 858) (1973), and *Cook v. Huff*, 274 Ga. 186, 187 (1) (552 SE2d 83) (2001).

When a timely objection is raised to the admission of a prior will in a case involving claims of undue influence, the probate court must make a fact-dependent inquiry as to the relevance of the prior will on the claims raised. Here, the probate court determined the 2006 will was relevant, and its probative value was not substantially outweighed by any danger of unfair prejudice, confusion of the issues, or

6

potential misleading of the jury under OCGA § 24-4-403. "Rule 403 is an extraordinary remedy which the courts should invoke sparingly, and the balance should be struck in favor of admissibility." *Central Ga. Women's Health Center v. Dean*, 342 Ga. App. 127, 141 (2) (800 SE2d 594) (2017) (citation and punctuation omitted). Given that a wide range of evidence may be considered in a will contest based on testamentary capacity and undue influence, we hold the probate court's ruling was not an abuse of discretion.

(b) *Revocation of Power of Attorney*

Petitioner argues the probate court erred in admitting evidence of Decedent's revocation of the power of attorney given to Petitioner because the probate court had previously determined that the 2021 will had not been revoked, and the revocation of the power of attorney therefore was not relevant to any issue at trial. We disagree.

Here, given that claims of undue influence can be supported by a wide range of evidence regarding the circumstances that existed both before and after the execution of the 2021 will, the revocation of the power of attorney was relevant as to the question of Decedent's capacity and whether undue influence existed when the 2021 will was executed. See *Henry*, 366 Ga. App. at 640 (1); *Slosberg v. Giller*, 341 Ga. App.

581, 582 (1) (801 SE2d 332) (2017) ("[E]vidence as to the facts and circumstances that occurred before and after the execution of the documents at issue may be considered by the trier of fact when determining whether undue influence existed at the time the documents were executed."). The revocation, which occurred eight days after the execution of the 2021 will, was relevant to the issues before the jury because it provided evidence as to Decedent's state of mind and capacity at the time of the 2021 will's execution. See *Davison v. Hines*, 291 Ga. 434, 438 (3) (729 SE2d 330) (2012) ("[R]elevant evidence about the [testatrix's] state of mind at the time of the execution of the will includes testimony relating to a reasonable period of time before and after the execution of the will.") (citation and punctuation omitted). The revocation ended the power of attorney relationship between Decedent and Petitioner, the person Caveators contend unduly influenced their mother and exerted control over her in the making of the 2021 will. Circumstances and events that took place before and after the execution of the 2021 will were relevant. The weight to be given that testimony was ultimately a jury question. The probate court also performed an analysis under Rule 403 and found that the evidence was admissible and that the probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues or

8

misleading the jury. Finally, the court gave a limiting instruction as to this evidence, to which Petitioner did not object. Accordingly, we find no abuse of discretion in the probate court's denial of the motion in limine on this issue.[4]

(2) *Jury Instruction*

Petitioner argues that the probate court improperly instructed the jury by providing a failure to produce evidence instruction. This instruction usually arises in the context of spoliation. Here, Petitioner contends there was no spoliation, so the probate court was not authorized to give this instruction on that basis. Moreover, the evidence did not otherwise authorize the instruction, and the instruction was harmful. We agree.

Following the presentation of evidence, the probate court held a jury charge conference. Caveators requested that the jury be charged on a party's failure to produce evidence because Petitioner testified that some of the items taken from Decedent's home during Decedent's hospitalization, specifically boxes, a briefcase

---

[4] On appeal, Petitioner argues the danger of unfair prejudice, confusion of the issues, and misleading the jury in admitting the revocation was evident because a juror asked the probate court to repeat its limiting instruction. However, we find Petitioner's argument meritless because there is nothing in the record showing that admission of the evidence confused the jury or that the juror's request was anything more than simply being unable to hear the probate court's instruction.

and Decedent's cell phone, were still in Petitioner's possession.[5] However, there was no showing made to suggest what, if any, relevant evidence was contained within the items taken by Petitioner. Caveators asserted that the instruction was proper because Petitioner had failed to provide these things to Caveators. Petitioner objected to the charge, asserting that there was no evidence to support it. The probate court overruled Petitioner's objection and instructed the jury as follows:

> When a party has evidence that rejects or disproves a claim or charge made against the party and h[e] or she fails to produce it, or having . . . more certain and satisfactory evidence relies on that which is of a weaker or inferior nature, a presumption arises that the charge or claim is well founded. This presumption may be rebutted, however.

The jury ultimately found in favor of Caveators.

Here, Petitioner contends there was no spoliation and the probate court was not authorized to give this instruction based on spoliation or otherwise. "Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." *AMLI Residential Properties v. Ga. Power Co.*, 293 Ga. App. 358,

---

[5] Caveators did not file a motion for sanctions or otherwise seek a ruling on this failure to produce issue prior to trial.

361 (1) (667 SE2d 150) (2008) (citation and punctuation omitted). "Among the possible sanctions for spoliation is a jury instruction that allows an adverse inference that the lost or destroyed evidence would have been harmful to the party in control of the evidence." *MARTA v. Tyler*, 360 Ga. App. 710, 711 (1) (860 SE2d 224) (2021). However, this jury instruction is "a severe sanction" and should be "generally reserved for intentional destruction of material evidence." Id. (citations and punctuation omitted). "[A] jury instruction allowing for an adverse inference . . . is typically only reserved for exceptional cases[.]" *Creek House Seafood & Grill, LLC v. Provatas*, 358 Ga. App. 727, 731 (2) (856 SE2d 335) (2021) (punctuation omitted).

Caveators argue that the jury charge was an appropriate instruction tailored to the evidence, as there was testimony before the jury regarding the existence of items that were not produced.[6] "While a trial court must instruct the jury on every material issue presented by the evidence, spoliation of evidence is not a fact the jury is empowered to find by inference. Instead, whether spoliation occurred is a question of

---

[6] Even if we were to accept Caveators' argument, as we stated in *Tyler*, this "would impermissibly circumvent the established procedures to address the suspected spoliation of evidence, which procedures include a thorough evaluation of the evidence by the trial court." *Tyler*, 360 Ga. App. at 712 (1), n.7 (citations omitted).

fact, to be decided by the court prior to trial." *Tyler*, 360 Ga. App. at 712 (1) (citations and punctuation omitted).

> Prior to charging the jury on spoliation, the [probate] court must determine whether spoliation occurred, whether the spoliator acted in bad faith, the importance of the compromised evidence, and so on. Once a [probate] court has determined that spoliation has occurred, the court should weigh the following five factors when deciding the appropriate penalty: (1) whether the party seeking sanctions was prejudiced as a result of the destroyed evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the destroying party acted in good or bad faith; and (5) the potential for abuse if any expert testimony about the destroyed evidence was not excluded.

Id. (citations and punctuation omitted).

Here, Caveators filed broad discovery requests which did not specifically request to inspect or otherwise have Petitioner produce the items taken by Petitioner from Decedent's home.[7] Caveators did not file any objection to discovery responses from Petitioner, did not file a motion for sanctions, and there was no evidentiary

---

[7] For example, Caveators made a discovery request for "all documents, e-mails, correspondence and other written communications between [Petitioner and Decedent]." However, the requests never asked for the cell phone to be produced and Petitioner never denied being in possession of Decedent's cell phone.

hearing regarding any items that Petitioner allegedly failed to produce. While the record does not show what facts the unproduced items might have established, the record does show that the probate court did not analyze the above factors and did not make any express factual finding that spoliation occurred.

"In order for a trial court's jury instruction to constitute reversible error, the party challenging the instruction must establish that the instruction was both legally erroneous and harmful." Id. at 713 (1) (citation and punctuation omitted). Here, the probate court's charge is presumed to be harmful because it was "unauthorized by the evidence" and "inject[ed] into the case issues not made by the pleadings or evidence." Id. at 714 (1) (citation omitted). Even though the charge was not directed at either party and a failure to produce evidence was not referenced in closing arguments, the failure to produce was not an "abstract proposition." See id. We cannot reasonably say that any rational juror would believe the inference applied equally to both parties or that the jury was not misled by the erroneous charge. See id. ("A charge unauthorized by the evidence . . . is grounds for new trial unless it is apparent that the jury could not have been misled by it."). Given that there is insufficient evidence in the record to support a finding of spoliation, the erroneous

13

jury instruction prejudiced Petitioner's case. Therefore, the trial court committed reversible error, and we remand the case for a new trial.

*Judgment affirmed in part and reversed in part, and case remanded. Dillard, P. J., and Brown, J., concur.*